**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: May 24 2007

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 06-31414 |
| | ) | |
| Michael Alan Armstrong and | ) | Chapter 7 |
| Lorelle Grace Armstrong, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's motion to dismiss for abuse brought under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 22] and Debtors' response [Doc. # 27]. After a hearing on the motion that Debtors and their attorney attended in person and the attorney for the United States Trustee ("UST") attended by telephone, the parties agreed that the court should initially determine only whether there is a presumption of abuse under § 707(b)(2), leaving issues regarding abuse under § 707(b)(3) to be determined after an evidentiary hearing to be held only if no presumption exists. The parties have submitted supplemental briefs on the § 707(b)(2) issue. [Doc. ## 34, 38, & 40]. The specific issue to be determined is whether expenses for two households may be considered in determining whether there is a presumption of abuse under § 707(b)(2) where the debtors filed a joint petition but were separated and living in separate households at the time of filing. Because the court concludes that expenses for both households may be considered, the court will deny the motion to the extent brought under § 707(b)(2) and will set the motion for further hearing to the extent brought under § 707(b)(3).

**BACKGROUND**

Debtors are married but are legally separated and live in separate households. They have two minor children. As permitted by 11 U.S.C. § 302, on June 13, 2006, Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code, listing primarily, if not entirely, consumer debts. As required under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), they also completed and filed Official Form B22A, Statement of Current Monthly Income and Means Test Calculation. 11 U.S.C. § 707(b)(2)(C). The Debtors report total "current monthly income," as that term is defined in 11 U.S.C. § 101(10A), in the amount of $5,955, which is above the median family income for a family of four in Ohio. One of the deductions on Debtors' initial means test calculation was on Line 21, where it was stated that $620 should be deducted for "Rent for Debtor H, who is moving out 6/10/06," which was three days before the bankruptcy case was filed. They also included the same rent and other expenses for a separate household on Line 56 under Part VIII of the Form B22A, captioned Additional Expense Claims. Debtors' initial means test calculation reflected monthly disposable income in a negative amount, meaning that there was no presumption of abuse.

The United States Trustee ("UST") disagreed with Debtors' initial means test calculation. UST filed his motion to dismiss, arguing, among other things, that Debtors did not properly calculate their allowable deductions under the means test as set forth in § 707(b)(2)(A) and that if properly calculated a presumption of abuse exists.

On September 29, 2006, Debtors filed an Amended Form B22A, resolving several of UST's original issues. [Doc. #24]. Amended Form B22A reflects monthly disposable income in the amount of $1,475.53. The parties agree that Debtors are entitled to an additional vehicle operations expense of $200 under the means test that is not included in their Amended Form B22A and that will result in a monthly disposable income figure of $1,275.53. In the Amended Form B22A Debtors removed the deduction for $620 for rent on Line 21, making it zero, but left the separate household expenses on Line 56 under Part VIII. Although Debtors now concede that a presumption of abuse arises under § 707(b)(2)(A) and apparently no longer contend that the expenses fit on Line 56, Part VIII under § 707(b)(2)(A)(ii)(I), *but see In re Graham*, No. 06-54764, 2007 Bankr. LEXIS 720, *9-*10, 2007 WL 685945, *4 (Bankr. S.D. Ohio Mar. 6, 2007), they contend that the additional expenses incurred for a second household due to their separation constitute a special circumstance under § 707(b)(2)(B) that rebuts the statutory presumption.

UST does not dispute the accuracy of the Amended Form B22A or the bona fides of the claimed expenses for the second household, *see* 11 U.S.C. § 707(b)(2)(B)(ii) and (iii), but disputes that expenses for

a second household are "special circumstances" so as to rebut the presumption of abuse. However, UST agrees that if such expenses constitute "special circumstances," there is no presumption of abuse. The parties agree that the court should determine on the record before it whether a presumption of abuse arises in this case.

## LAW AND ANALYSIS

As amended by BAPCPA, § 707(b)(1) provides that the court, after notice and a hearing, "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." Section 707(b)(2)(A) sets forth a "means test" calculation to determine whether there is a presumption of abuse. Where the means test calculation results in sufficient disposable income such that a presumption of an abusive filing arises, a debtor may only rebut the presumption by demonstrating "'special circumstances,' such as a serious medical condition or a call or order to active duty in the Armed Forces," to the extent such special circumstances "justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). If the inclusion of the expenses warranted by the special circumstances causes monthly disposable income to fall below the § 707(b)(2)(A) threshold amounts, then the presumption of abuse is rebutted. 11 U.S.C. § 707(b)(2)(B)(iv).

Using the words "such as" to describe special circumstances, the language of the statute does not lend itself to constructing a *per se* rule for determining whether a particular situation is a "special circumstance." Rather, the court agrees with the approach of those courts that have found the language of § 707(b)(2)(B) implies a fact-specific inquiry within the court's discretion. *In re Lenton*, 358 B.R. 651, 661 (Bankr. E.D. Pa. 2006); *In re Thompson*, 350 B.R. 770, 777 (Bankr. N.D. Ohio 2006); *In re Templeton*, No. 06-11567-BH, 2007 Bankr. LEXIS 1002 at *5, 2007 WL 886010 at *2 (Bankr. W.D. Okla. March 8, 2007). The examples of special circumstances in § 707(b)(2)(B)(i) are not exhaustive; they are merely illustrative of the type of circumstances that Congress found warranted an adjustment to the disposable income calculation under the means test. *See In re Templeton*, 2007 Bankr. LEXIS 1002 at *5, 2007 WL 886010 at *2; *In re Haman*, No. 06-10857 (BLS), 2007 Bankr. LEXIS 1335, *14, 2007 WL 1175532, *5 (Bankr. D. Del. April 20, 2007). Applying the principle of *ejusdem generis,* a cannon of statutory interpretation, the court must "interpret legislatively provided examples as typical of the general category covered." *United States v. Parson*, 955 F.2d 858, 869 n.15 (3d Cir. 1992); *see United States v. Miller*, 161 F.3d 977, 983 (6th Cir. 1998). In so doing, the court finds that a "special circumstance," as contemplated in § 707(b)(2)(B), is one that is out of the ordinary for an average family and leaves the debtor with no

reasonable alternative but to incur the expense. *See In re Batzkiel*, 349 B.R. 581, 586 (Bankr. N.D. Iowa 2006) (citing 6 Collier on Bankruptcy ¶ 707.05[2][d]).

In this case, Debtors contend that a special circumstance exists due to their legal separation and the fact that they live in separate households. UST argues that a legal separation does not constitute a special circumstance because it is "not unanticipated" and because Debtors have a reasonable alternative, that is, they can bifurcate their joint case or one of them could dismiss their case and file separately. In support of this position, UST relies on the observation in *In re Sparks*, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006), that the two examples in § 707(b)(2)(B) "depict the type of unanticipated development which leaves a debtor with *no reasonable alternative* but to incur the expense or accept the income adjustment." In that case, the debtor claimed expenses due to special circumstances existed because he had signed a lease that was still in effect that required monthly rent payments on a larger apartment than he needed in an amount higher than the applicable Internal Revenue Standards under the means test, plus his employment required him to travel 40 miles per day. *Id.* at 229-30. The court in *Sparks* found that "special circumstances" are not demonstrated simply by showing that the debtor has incurred these expenses in the past and that the "[§ 707(b)(2)(B)] exception is not available to justify the approval of expenses incurred merely at a debtor's discretion, the impact of which can be minimized, if not eliminated, through careful consideration of the remedies available to debtors under the Bankruptcy Code." *Id.* at 230-31.

This court does not read *Sparks,* or Congress, as requiring every "special circumstance" to be unanticipated. A call to service on active duty in the Armed Forces might sometimes be anticipated, particularly in these times, when a married couple files a joint petition. Instead *Sparks'* holding is that a debtor is not entitled to an adjustment to the expenses allowed under the means test for discretionary expenses for which there are reasonable alternatives – in that case, utilizing remedies under the Bankruptcy Code such as rejecting the lease for unnecessary space. Nor is there any language in § 707(b)(2)(B) that suggests that the special circumstance must be unanticipated or outside the control of the debtor. *See In re Thompson*, 350 B.R. at 777 (noting that neither example in the Bankruptcy Code - a serious medical condition or a call to active military duty - is necessarily of an entirely involuntary nature since "[t]he serious health condition could stem from a self-inflicted injury, and an individual called to active duty could have voluntarily enlisted as a reservist"); *In re Templeton*, 2007 Bankr. LEXIS 1002 at *7-*8, 2007 WL 886010 at *2 (same); *In re Haman*, 2007 Bankr. LEXIS 1335 at *13-*15, 2007 WL 1175532 at *5 (same); *In re Graham*, 2007 Bankr LEXIS 720 at *13, n.3, 2007 WL 685945 at *4, n.3. *But see In re Tranmer*, 355 B.R. 234, 251 (Bankr. D. Mont. 2006) (stating that "'special circumstances' contemplates circumstances

4

beyond a debtor's reasonable control"). As the *Graham* court noted, "[h]ad Congress intended to place such a restriction on the nature of special circumstances it envisioned, Congress knows well how to construct appropriate language." *In re Graham*, 2007 Bankr. LEXIS 720 at *12, 2007 WL 685945 at *4 (citing § 362(n)(2)(B) ( "... filing of the petition resulted from circumstances beyond the control of the debtor ...."), § 521(e)(2)(C) ("... failure to provide a copy of such tax return or such transcript is due to circumstances beyond the control of the debtor ...."), and § 1308(b)(2) ("... failure to file a return as required under this subsection is attributable to circumstances beyond the control of the debtor....").

The court also finds no merit in UST's argument that Debtors have a reasonable alternative since they can simply bifurcate their bankruptcy case. The "reasonable alternative" language in § 707(b)(2)(B) refers to alternatives to incurring the expense, *In re Haman*, 2007 Bankr. LEXIS 1335 at *14, 2007 WL 1175532 at *5, not to procedural alternatives that will not lessen the expense. Proceeding in separate bankruptcy cases does not address the expense incurred by living in separate households. In *Graham,* the court rejected a similar argument:

> In order to split their cases, the Debtors would have to pay a second filing fee, file two separate statements of financial affairs (an amended statement for one debtor, reflecting only his or her information, and a second statement for the other debtor), two complete set of schedules, an additional set of all the forms mandated by § 521 of the Bankruptcy Code and Rules, and all other documents attendant to the filing of a bankruptcy case, in addition to the individual Forms 22. The Court finds that the UST's position elevates form over substance, and that there is no requirement in the statute that the Debtors jump through this expensive hoop.

*In re Graham,* 2007 Bankr. LEXIS 720 at *9, 2007 WL 685945 at*3.

In *Graham*, which this court finds persuasive, a joint Chapter 7 petition was filed by debtors who lived in different states. After being unable to find employment in the area in which his family lived, the debtor-husband found employment in another state. Under a shared parenting plan from a prior marriage, the debtor-wife would lose custody of her minor children if she relocated out of the area. The court concluded that incurring additional expenses for maintaining two households was a special circumstance as contemplated in § 707(b)(2)(B). *Id.*, 2007 Bankr. LEXIS 720 at *11, 2007 WL 685945 at *4.

The case before this court involves a legal separation rather than a separation necessitated by employment issues. But the court finds that the fact of Debtors living in separate households due to their legal separation is also a special circumstance not faced by the ordinary family. While individuals who intentionally incur the expense of separate households in contemplation of bankruptcy for the purpose of rebutting any presumption of abuse could not demonstrate a "special circumstance" as contemplated under

5

§ 707(b)(2)(B), UST does not suggest that is the case with the Armstrongs. Rather, UST contends that a legal separation can never be a special circumstance under § 707(b)(2)(B). The court disagrees and finds that Debtors' expenses in incurred in maintaining separate households in this case are justified and they are expenses for which there are no reasonable alternatives. In a case where there is no basis to assert that the marital separation is a false manipulation of the means test, the alternative to expenses for two sets of living quarters is continuing to reside under one roof. It is not a reasonable one. A decision made by one or both married adults with two children that they can no longer live with one another as a unit under one roof is not routine financial decision making of the sort susceptible to judicial second guessing as unreasonable to existing creditors. Unlike a debtor who wastefully moves into an apartment that is three times as big as necessary, marital separation is the kind of difficult life circumstance that presents the high probability of having every bit as devastating an impact on family life and finances as serious illness and military deployment.

Because UST does not otherwise dispute the accuracy of Debtors' Amended Form B22A and agrees that if Debtors' expenses for their separate households constitute "special circumstances" there is no presumption of abuse, the court will deny UST's motion to the extent it is based on a presumption of abuse. The court will enter a separate order in accordance with this memorandum of decision.

6